IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL DRAKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-279-DWD |
| | ) |
| THE PROCTER & GAMBLE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

**DUGAN, District Judge:**

This matter is before the Court on the Motion to Stay, Transfer, or Dismiss filed by Defendant, The Procter & Gamble Company ("P&G") (Doc. 34). This case is one of four duplicative class actions filed against P&G currently pending in federal courts in New York.[1] Defendant asks the Court to transfer, dismiss, or stay all proceedings and deadlines in this action pending resolution of the previously filed, substantially-related class action currently pending in the Southern District of New York, i.e., *Nieves v. The Procter & Gamble Co.*, No. 7:21-cv-186-CS ("the SDNY Action."). Plaintiff Michael Drake opposes the motion, arguing that a stay or dismissal is unwarranted and would prejudice Plaintiff and the Illinois plaintiffs, and that venue in the Southern District of New York is not appropriate or otherwise warranted by convenience or the interest of justice.

---

[1] A fifth punitive class action was filed against Defendant in the Eastern District of Missouri, i.e. *Helterbrand v. P&G*, No. 4:21-cv-855. However, by order dated September 22, 2021, *Helterbrand* was remanded to the Circuit Court of St. Louis County, Missouri (Doc. 45-3). Court documents are public records of which the Court can take judicial notice. *See Spiegel v. Kim*, 952 F.3d 844, 847 (7th Cir. 2020).

1

**Background**

Plaintiff is an Illinois resident who alleges that he purchased Defendant's "Crest Gum & Enamel Repair" toothpaste in Illinois, and that the toothpaste contained false and misleading representations (Doc. 1-1). Defendant is a resident of Ohio (Doc. 1). Plaintiff filed his complaint in the Third Judicial Circuit Madison County, Illinois on February 1, 2021 (Doc. 1-1). Defendant removed the action to this Court on March 12, 2021 asserting diversity jurisdiction under 28 U.S.C. § 1332(d)(2)(A) (Doc. 1). In his complaint, Plaintiff alleges that Defendant made false and misleading representations concerning two of its products: Crest Gum & Enamel Repair (both, the "intensive clean" and "advanced whitening" varieties) and its Oral-B Gum & Enamel Repair toothpaste.[2] Plaintiff brings three counts against Defendant for violations of the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 ILCS § 505/1, *et seq.*, and for unjust enrichment (Doc. 1-1). Plaintiff seeks to certify a class consisting of "[a]ll persons in the state of Illinois who purchased one or more of the Class Products in Illinois during the Class Period." Plaintiff seeks an award of compensatory damages, injunctive relief, punitive damages, and attorney's fees.

On January 9, 2021, and one-month prior to Plaintiff initiating this lawsuit, plaintiff Carmen Nieves filed a punitive class action against Defendant in the Southern District of New York. *See Nieves v. The Procter & Gamble Co.*, No. 7:21-CV-00186 (S.D.N.Y.).

---

[2] Defendant filed a Motion to Dismiss Plaintiff's Complaint (Doc. 24), arguing in part, that Defendant has never sold its Oral-B Gum & Enamel Repair toothpaste in Illinois or the United States (Doc. 24, at p. 17). This motion to dismiss is still pending, and the Court will address the motion as appropriate after resolution of this Motion to Stay, Transfer, or Dismiss.

Similar punitive class actions were later filed against Defendant on April 14, 2021 in the Northern District of California, *see Lichtinger v. The Procter & Gamble Co.,* No. 3:21-CV-02680-MMC (N.D. Cal.), and on May 4, 2021 in the Middle District of Florida, *see Keirsted v. The Procter & Gamble Co.,* No. 6:21-CV-00778-RBD-GJK (M.D. Fla.). Lichtinger and Keirsted voluntarily transferred their cases to the Southern District of New York in order to consolidate their cases with the *Nieves* case.

On September 2, 2021, the consolidated plaintiffs filed a master class action complaint in the SDNY Action (Doc. 45-2). The consolidated complaint also asserts that Defendant's "Crest Gum & Enamel Repair" toothpaste contained false and misleading representations (Doc. 35-1). The consolidated plaintiffs bring counts for violations of Florida, New York, and California consumer protection statutes, in addition to breaches of express warranty, implied warranty of merchantability, and the Magnusom Moss Warranty Act, negligent misrepresentation, fraud, and unjust enrichment (*Id.*). The consolidated plaintiffs seek to certify three subclasses: New York, Florida, and California, with class members consisting of "all persons in New York, Florida, and California who, from the beginning of the applicable limitations period through the date of trial, purchased one or more of Defendant's Products for personal use and not for resale (*Id.*). The consolidated plaintiffs seek preliminary and injunctive relief, restitution, disgorgement, monetary and statutory damages (*Id.*).

On October 21, 2021, the SDNY Court held a pre-motion conference on Defendant's request to file a motion to dismiss the consolidated complaint, and a briefing schedule was set allowing for Defendant to file a motion to dismiss on or before

3

November 12, 2021 (*See Nieves v. The Procter & Gamble Co.*, No. 7:21-CV-00186 (S.D.N.Y.), at Docket Entry dated October 21, 2021).

Defendant now asks the Court to transfer, dismiss, or stay all proceedings and deadlines in this action pending resolution of the SDNY Action under the "first-to-file" rule or otherwise for the convenience of the parties.

## Discussion

No mechanical rule governs the handling of overlapping cases. *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 838 (7th Cir. 1999). "The first-to-file rule provides that a district court may "for reasons of wise judicial administration" dismiss or stay "a parallel action that is already pending in another federal court." *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993); *Guill v. All. Res. Partners, L.P.*, No. 16-CV-0424-NJR, 2017 WL 1132613, at *2 (S.D. Ill. Mar. 27, 2017). While the Seventh Circuit Court of Appeals "does not rigidly adhere to the first-to-file rule," the decision to invoke the rule is part of the district courts' "inherent power to administer their dockets so as to conserve scarce judicial resources" by avoiding duplicative litigation. *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995); *see also Askin v. Quaker Oats Co.*, No. 11-CV-111, 2012 WL 517491, at *3 (N.D. Ill. Feb. 15, 2012).

District courts are accorded "a great deal of latitude and discretion in determining whether one action is duplicative of another, but generally, a suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions." *See Serlin*, 3 F.3d at 223; *see also McReynolds v. Merrill Lynch & Co., Inc.*, 694 F. 3d 873, 889 (7th Cir. 2012). However, second filed actions may proceed where favored by the

4

interests of justice. *Nicholson v. Nationstar Mortgage LLC of Delaware*, 2018 WL 3344408, at *5 (N.D. Ill. July 6, 2018); *see also Blair*, 181 F.3d at 838; *Serlin*, 3 F.3d at 223.

Plaintiff's complaint is substantially similar to the consolidated complaint in SDNY. Both suits identify the same product—Crest Gum & Enamel Repair Toothpaste—as bearing misleading labels. The suits identify the same key phrases, including, "gum repair" and "reversing gingivitis", as the sources of misrepresentation, and also cite the same facts from the American Dental Association to support their claims that the product cannot repair gums without assistance from a dentist. While the SDNY Action does not specifically involve Illinois based consumer fraud claims, the question of whether cases are substantially similar is a question of substance rather than form. *See Jaramillo v. DineEquity, Inc.*, 664 F.Supp.2d 908, 916 (N.D. Ill. 2009). "As long as the underlying facts are the same . . . the fact that the two complaints allege violations of different state laws is not enough to render them substantially dissimilar for purposes of the first-to-file analysis." *Askin*, 2012 WL 517491 at *3.

Nevertheless, Defendant as the moving party, has not met its burden to show that transfer is appropriate here. *See Forcillo v. LeMond Fitness, Inc.*, 220 F.R.D. 550, 552, 3-CV-565-MJR (S.D. Ill. 2004) (citing *Heller Financial Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286 (7th Cir. 1989) (the burden is on the moving party to establish that transfer is warranted)). The Seventh Circuit appears to authorize transfer of a case filed here to the district of an earlier-filed case only if 28 U.S.C. § 1404(a) authorizes such a transfer of venue. *See Rsh. Automation, Inc. v. Schrader-Bridgeport Int'l., Inc.*, 626 F.3d 973, 980 (7th Cir. 2010); *BRT Heavy Equip., LLC v. C. Norris Mfg., LLC*, 14-CV-1407-MJR, 2015 WL 13158332,

5

at *5 (S.D. Ill. Apr. 15, 2015) (The sequence in which two federal cases are filed should be considered but is only one factor in a transfer analysis); *see also Aliano v. Quaker Oats Co.*, 2017 WL 56638, at *4 (N.D. Ill. Jan. 4, 2017).  28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

To satisfy the "where it might have been brought" requirement, transfer is appropriate under § 1404(a) if three criteria are met: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district, and (3) transfer of the case will serve the convenience of the parties and witnesses and promote the interest of justice.  *See BRT Heavy Equip., LLC.*, 2015 WL 13158332, at *5. The federal venue statute, 28 U.S.C. § 1391(b), provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought . . . any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

There is no question that venue is proper in this, the transferor district.  The parties have not challenged venue here, and the allegations in Plaintiff's complaint make clear that a substantial part of the events giving rise to Plaintiff's claim – Defendants'

6

marketing and sale of its products, and Plaintiff's purchase of the products – occurred within this District. Accordingly, venue is proper here under 28 U.S.C. § 1391(b)(2).

However, venue and jurisdiction in the Southern District of New York is less clear. Apart from a blanket statement by Defendant that venue is proper in the Southern District of New York, Defendant has not offered any factual allegations to support this. The alleged activities giving rise to Plaintiff's claim all occurred in Illinois. Further, Defendant is a resident of Ohio (Doc. 1, ¶ 9), as residence is defined by § 1391(c)(2)[3]. As such, Defendant has not established that venue would be appropriate under 28 U.S.C. § 1391(b)(1) or (2).

Similarly, because the alleged activities giving rise to Plaintiff's claim all occurred in Illinois, it is unlikely that there would be a sufficient link between the "forum and the underlying controversy" to allow the Southern District of New York to exercise specific personal jurisdiction over Defendant in a suit brought by Plaintiff. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 916, 919 (2011); *see also Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020). Defendant has not argued that its contacts with New York are so "continuous and systemic" as to render it "essentially at home" there, such that the Southern District of New York could exercise general personal jurisdiction over Defendant in a suit brought by Plaintiff. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). While Defendant, who is now seeking to transfer to that district, would surely consent to personal jurisdiction in New York, the Supreme Court has determined that a

---

[3] *See* 28 U.S.C. § 1391(c)(2) (if a defendant is an entity with the capacity to sue and be sued, whether or not incorporated, it shall be deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question.").

defendant's subsequent consent to jurisdiction is irrelevant to the question of "where [the case] might have been brought" initially. *Hoffman v. Blaski*, 363 U.S. 335, 342-43 (1960). In sum, Defendant has not met its burden to show that the Southern District of New York is a "district or division where [Plaintiff's case] might have been brought" initially under § 1404(a).

The Court may still contemplate the possibility of a stay. Here, there is significant overlap between the two cases such that there is a possibility that the SDNY Action could dispense with certain issues and relief that may not need to be revisited here. Nevertheless, Plaintiff's allegations of prejudice merit additional consideration. This case and the SDNY Action are largely in their infancies. Indeed, this matter appears to be further along than the SDNY Action with a fully briefed motion to dismiss and a set scheduling order. The Parties have further begun discovery and negotiated agreed upon ESI and discovery protocols here.

Plaintiff also argues that he and the putative Illinois class members will be prejudiced by a stay because the anticipated class members will likely need to self-identify and the delay caused by a stay of unknown – yet likely long – duration would create a substantial risk of putative class members being unable to recall whether they purchased the class products within the applicable statute of limitations. These fears are not unfounded and weigh against the imposition of a stay, particularly considering the comparative stages of litigation in both matters, and because Defendant failed to present any arguments of a potential hardship should it be required to continue litigating both cases.

"If there is even a fair possibility that the stay will work damage to someone else, the party seeking the stay must make out a clear case of hardship or inequity in being required to go forward."  *Nicholson v. Nationstar Mortgage, LLC of Delaware*, 2018 WL 334408, at *4 (N.D. Ill. Jul 6, 2018) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (internal markings and quotations omitted).  Defendant has not made a clear case of hardship or inequity here.  Moreover, Plaintiff's counsel has represented that Plaintiff is willing to work with the attorneys in the SDNY Action to avoid unnecessary duplication.  At this time, the development of a joint discovery plan may prove more useful in mitigating any potential hardships on Defendant and would better serve the interests of justice than a limitless stay.  Given these facts, the Court finds that the interests of justice would not be served by staying the case pending resolution of the SDNY Action at this time.  However, should different circumstances arise during the course of this litigation which may warrant the imposition of a stay, the parties are granted leave to seek such relief from this Court as may be appropriate.

## Conclusion

For the foregoing reasons, Defendant's Motion to Stay, Dismiss, or Transfer (Doc. 34) is **DENIED**.  The Court will issue separate opinions on Defendant's Motion to Dismiss and the parties' Motion for Protective Order and Entry of ESI Protocol.

**SO ORDERED.**

Dated: October 29, 2021

DAVID W. DUGAN
United States District Judge

9