IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL DRAKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-279-DWD |
| | ) |
| THE PROCTER & GAMBLE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Now before the Court is Defendant Procter & Gamble Company's motion to dismiss (Doc. 24). Defendant seeks to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Plaintiff opposes the Motion (Doc. 33). For the reasons detailed below, the Motion will be denied.

## Background

Plaintiff is an Illinois resident who alleges that he purchased Defendant's "Crest Gum & Enamel Repair" toothpaste in Illinois, and that the toothpaste contained false and misleading representations (Doc. 1-1). Plaintiff filed this action on behalf of Illinois consumers on February 1, 2021 in the Circuit Court for Madison County, Illinois, seeking monetary damages and injunctive relief for unfair business practices and deceptive advertising in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.* ("ICFA"), and unjust enrichment. Plaintiff seeks to certify a class consisting of "[a]ll persons in the state of Illinois who purchased one or more of the

1

Class Products in Illinois during the Class Period." Plaintiff seeks an award of compensatory damages, injunctive relief, punitive damages, and attorney's fees. Defendant removed the action to this Court on March 12, 2021 (Doc. 1). The Court enjoys diversity jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) as Defendant is a resident of Ohio, and the amount in controversy exceeds the sum of $75,000 exclusive of costs and interest (Doc. 1).

Plaintiff alleges that Defendant falsely represented that its Crest Gum & Enamel Repair (both, the "intensive clean" and "advanced whitening" varieties) and its Oral-B Gum & Enamel Repair toothpaste (collectively, the "Products") repair gums (the "Representation"), and this Representation enabled Defendant to charge a premium from customers willing to pay extra to receive the benefits of gum repair (Doc. 1-1). Plaintiff further alleges that no toothpaste or toothpaste ingredient (including the Products) can repair gums or damage done to gums by periodontal disease without treatment from a dental professional (Doc. 1-1, ¶¶ 59-60). According to Plaintiff, when he purchased two tubes of Defendant's Crest Gum & Enamel Repair in Alton, Illinois, he purchased the products in reliance on the Representation, paying more than he would have for similar products without the Representation (Doc. 1-1, ¶¶ 73-76).

## Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Claims filed within the federal courts are governed by Federal Rule of Civil Procedure 8(a)(2)

which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For a claim to survive a Rule 12(b)(6) motion to dismiss, the claim must sufficiently "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The Court may also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Here, Plaintiff's consumer fraud claims arise under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"). The ICFA "protects consumers against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019). Deceptive or unfair practices include any misrepresentation or the concealment, suppression or omission of any material fact." 815 Ill. Comp. Stat. 505/2; *Vanzant*, 934 F.3d at 736. To recover on a claim under the ICFA, Plaintiff "must plead and prove that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages."

3

*Vanzant*, 934 F.3d at 736; *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012).

Deceptive conduct and unfair conduct are "separate categories" and as such a claim under the ICFA may be premised on either theory or both. *Vanzant*, 934 F.3d at 738. However, the two categories have different pleading standards. "If the claim rests on allegations of deceptive conduct, then Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *Id.* (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737). In pleading fraud, the complaint must identify the "who, what, when, where, and how" of the alleged fraud. *Id.* However, for claims based on unfair conduct, fraud is not a required element and Rule 9(b)'s heightened pleading standard does not apply. *Id.* (citing *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008)); *see also Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019).

## Discussion

Plaintiff's Count I alleges a violation of the ICFA based on Defendant's alleged unfair business practices (Doc. 1-1, p. 23). Plaintiff's Count II alleges a violation of the ICFA based on Defendant's alleged deceptive acts or practices (Doc. 1-1, p. 26). Plaintiff's Count III is for unjust enrichment (Doc. 1-1, p. 27). Defendant moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Defendant generally presents six arguments in favor of dismissal: (1) Plaintiff's claims are negated by the specific language on the Products' labels which are attached to the complaint; (2) Plaintiff's consumer fraud claims do not satisfy Rule 9(b)'s particularity requirements and

4

(3) are improperly duplicative; (4) Plaintiff lacks standing as to the Products he did not personally purchase or which were not sold in Illinois, (5) Plaintiff has not alleged a misrepresentation a reasonable person would rely upon to their detriment, and (6) Plaintiff's unjust enrichment fails along with the consumer fraud claims.

First, Defendant argues that Plaintiff's claims are negated by the plain language on the Products' labels.  In his complaint, Plaintiff focuses on the phrase "Gum & Enamel Repair."  Specifically, Plaintiff alleges that this phrase is misleading because the ordinary consumer would understand the toothpaste to have the ability to repair gums, **even though "no** toothpaste or toothpaste ingredient can repair gums or damage done to gums by periodontal disease" (Doc. 1-1, ¶ 59) and "[r]eversing gingivitis. . . requires a professional" (Doc. 1-1, ¶ 18).  Conversely, Defendant emphasizes two additional statements on the product labeling: "Clinically Proven to Help Reverse Gingivitis" and "Repairs Weakened Enamel" (Doc. 24, pp. 7-8).  Defendant argues that these statements do not reference periodontal disease, and therefore the toothpaste only represents that it can "help alleviate the redness and swelling of the gum associated with gingivitis" (Doc. 24, pp. 7-8).  Thus, Defendant argues that the labeling cannot mislead ordinary consumers into concluding that the toothpastes can repair "damage done to gums by periodontal disease" or advanced periodontal disease.

Even assuming that "periodontal disease" is a separate condition from gingivitis[1], Plaintiff's allegations are not as limited as Defendant represents.  Specifically,

---

[1] In his complaint, Plaintiff alleges that "periodontal disease" has multiple stages, ranging from early (gingivitis) to advanced (periodontitis) (Doc. 1-1, ¶ 15).

Plaintiff alleges that the plain and ordinary meaning of "Gum & Enamel Repair" implies that the toothpaste can repair both gums and enamel. However, Plaintiff complains that this allegation is false because "no toothpaste or toothpaste ingredient can repair gums or damage done to gums by periodontal disease" (Doc. 1-1, ¶ 59). The fact that Plaintiff claims the toothpaste cannot repair damage done to gums by periodontal disease is not inconsistent or contradictory to Plaintiff's allegation that the toothpaste also cannot broadly repair gums. Further, at this stage, the Court finds that it is plausible that a consumer might rely on the "Gum & Enamel Repair" labeling without examining the additional statements on the packaging. As such, these allegations are sufficient to withstand dismissal.

Related to this argument, Defendant also contends that Plaintiff has not alleged a misrepresentation that a reasonable person would rely upon to their detriment. To adequately plead a claim under the ICFA, Plaintiff must allege that "the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused **actual damages.**" *Vanzant*, 934 F.3d at 736. "[A]ctual reliance is not a necessary element of a claim under the ICFA." *See Breeze v. Bayco Prod. Inc.*, 475 F. Supp. 3d 899, 906 (S.D. Ill. 2020). Further, questions of what reasonable consumers might believe are ordinarily factual issues not appropriate for resolution on a motion to dismiss. However, where a proposed construction is "so illogical or impossible" dismissal may be warranted. *See Vanlangingham v. Campbell Soup Co.*, 492 F.Supp.3d 803, 808-809. Here, there is an argument to be made that a reasonable consumer would understand the phrase "Gum &

6

Enamel Repair" to unambiguously mean the toothpaste could repair gums without limiting conditions. Further, as discussed above, the additional language on the Products is not inconsistent with this interpretation. Therefore, Plaintiff's alleged facts, if true, establish a deceptive or false claim in the Products' labeling. This is sufficient to survive dismissal at this stage.

Next, Defendant argues that Plaintiff's consumer fraud claims must fail because Plaintiff did not satisfy Rule 9(b)'s particularity requirements, and because the counts are improperly duplicative. The Court is not persuaded by Defendant's arguments that Plaintiff's two ICFA counts are improperly duplicative of each other. Both counts bring claims under the ICFA but premised on different theories: Count I premised on Defendant's unfair business practices and Count II premised on Defendant's deceptive acts or practices. While both claims rely on similar facts and have the same elements, the pleading requirements of each differs. Specifically, Count I for unfair practices is not subject to the heightened pleading standards of Rule 9(b) for fraud, while Count II alleging deceptive acts or practices is. *See Eike v. Allergan, Inc.*, 2014 WL 1040728, at *4 (S.D. Ill. Mar. 18, 2014).

Further, at the pleading stage a party may pursue alternative theories and "state as many separate claims or defenses as it has regardless of consistency." *See* Fed. R. Civ. P. 8(e)(2). Accordingly, it is permissible to plead these counts separately, although they are similar. *In accord, Miller v. Affiliated Fin. Corp.*, 600 F. Supp. 987, 996-97 (N.D. Ill. 1984) (Even if there is no theoretical justification for labeling separate legal theories predicated on identical facts and producing identical relief as separate counts, there is no harm to in

retaining the similar counts until it becomes necessary to present the trier of fact with the matters plaintiff must prove in support of each theory).

Turning to the alleged pleading deficiencies, Defendant argues that Plaintiff cannot satisfy Rule 9(b)'s particularity requirements. While Rule 9(b) "does not require a plaintiff to plead all facts that if true would show that the defendant's alleged misrepresentations were indeed false, it does require the plaintiff to state the identity of the person making the representation, the time, the place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Camasta*, 761 F.3d at 737 (quoting *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal citations omitted). After reviewing the pleadings, the Court concludes that Plaintiff's complaint meets the Rule 9(b) standard. Plaintiff's complaint adequately alleges (a) the who: Defendant; (b) the what: "Gum Repair" labeling on the toothpaste and internet; (3) the when: purchases made during the Class Period, including Plaintiff's purchases in July 2020; (4) the where: on the label of the toothpaste, a copy of which is contained in the complaint; and (5) the how: by representing that the toothpastes can repair gum when in fact they cannot. The Court finds these allegations sufficient under Rule 9(b).

Defendant further argues that **Plaintiff lacks standing as to the Products he did not personally purchase, or which were not sold in Illinois.** Defendant asserts that Plaintiff's claims involving Oral-B Toothpaste must fail because this specific product was not sold in Illinois or the United States. In support, Defendant attached an Affidavit from its Senior Director for North American Paste, attesting that the Oral-B Toothpaste at issue in

8

Plaintiff's Complaint was not sold in Illinois or the United States of America (Doc. 24, p. 17).

The law on whether an individual has standing to represent putative class members for products he or she did not purchase is unsettled across the country. *See Geske v. PNY Technologies, Inc.*, 503 F.Supp.3d 687, 699 (N.D. Ill. 2020); *Burton v. Hodgson Mill, Inc.*, 2017 WL 1282882, *5 (S.D. Ill. Apr. 6, 2017); *Kisting v. Gregg Appliances, Inc.*, 2016 WL 5875007, *3 (E.D. Wis. Oct. 7, 2016); *Muir v. NBTY, Inc.*, 2016 WL 5234596, * 4 (N.D. Ill. Sept. 22, 2016).  Some courts apply a strict rule: "a class representative who purchased product X lacks standing to represent a class member who purchased product Y, because their injuries are necessarily different in kind."  *Geske*, 503 F.Supp.3d at 699 (citing *Pearson v. Target Corp.*, 2012 WL 7761986, at *1 (N.D. Ill. 2012) ("How could a class representative possibly have been injured by representations made on a product he did not buy?") (internal markings omitted).

However, a growing majority of others apply a "substantially similar" standard: "a class representative who purchased product X has standing to represent a class member who purchased Y if the products are 'substantially similar.'") *Geske*, 503 F.Supp.3d at 699; *Burton*, 2017 WL 1282882, at *5 (citing *Mednick v. Precor, Inc.*, 2014 WL 6474915 (N.D. Ill. Nov. 13, 2014) (finding that a plaintiff may have standing to sue for products not purchased if the misrepresentations are identical or substantially similar)); *see also Kubilius v. Barilla America, Inc.*, 2019 WL 2861886, at *3 (N.D. Ill. July 2, 2019) ("[T]he majority of courts have held that class representatives may represent class members who purchased 'substantially similar products.'").

Some courts also find it appropriate to consider this issue at the Rule 23 class certification stage. *See Kisting*, 2016 WL 5875007, at *4 (collecting cases); *see also Burton*, 2017 WL 1282882, at *5 ("Though standing should not be obtained via the back door of class certification, this Court finds that it would be premature to rule on standing/class certification issues that are clearly intertwined prior to the Plaintiff formally moving for certification."); *Eike v. Allergan, Inc.*, 2014 WL 1040728, at *4 (S.D. Ill. Mar. 18, 2014) ("[P]laintiffs' claims are premised on seeking to represent classes of consumers who bought and used similar products from [Defendants]. They need not have used every [product] manufactured by every defendant. The issue of substantial similarity is one for class certification review, not an issue that the Court will take up on a motion to dismiss."). Accordingly, the Court finds it appropriate to consider this issue at the class certification stage, and Defendant is granted leave to raise this argument at the time when class certification is squarely before the Court.

Finally, Defendant argues that Plaintiff's unjust enrichment claim should be dismissed because it cannot stand alone if the Court dismisses the ICFA claims. To state a claim for unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Jet v. Warrantech Corp.*, 436 F.Supp.3d 1170, 1181 (S.D. Ill. 2020). "When a claim of unjust enrichment arises out of the same conduct alleged in another claim, the unjust enrichment claim stands or falls with the other claim." *Id.* (citing *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)). Here, Plaintiff's theory of unjust enrichment

10

arises out of the same conduct as his ICFA claims. As such, the claim stands or falls with the ICFA claim. Based on this Court's determination that Plaintiff has stated a colorable ICFA claim, the related unjust enrichment claim is also sufficient to withstand dismissal.

## Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 24) is **DENIED**.

Having resolved Defendant's Motion to Dismiss, the Court finds it appropriate to address Defendant's Motion to Stay Discovery (Doc. 49). On November 8, 2021, Defendant filed its Motion for a limited stay to discovery pending the resolution of its Motion to Dismiss. As the Motion to Dismiss has now been resolved, the relief requested by Defendant in its Motion to Stay is now moot. Accordingly, the Motion for Stay (Doc. 49) is **DENIED, as moot**.

**SO ORDERED.**

Dated: November 17, 2021

DAVID W. DUGAN
United States District Judge